**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ALABAMA**
**SOUTHERN DIVISION**

STEPHANIE BENNETT CORLEY,

      PLAINTIFF,

v.                             CASE NO.: CV-02-J-1391-S

BLUE CROSS AND BLUE SHIELD OF
ALABAMA,

      DEFENDANT.

**ENTERED**

**FEB 14 2003**

## MEMORANDUM OPINION

Pending before the court is the defendant's motion for summary judgment (doc. 27), evidence in support of said motion (doc. 28) and memorandum in support of its motion, to which the plaintiff has responded by submitting evidence (doc. 36) and a response in opposition to said motion. The defendant thereafter filed a reply. The court having considered the pleadings, evidence and memoranda of the parties, the court finds as follows:

### I. Factual Background

The plaintiff was employed by the defendant as a "Floating Service Representative" from November 20, 2000 until she was fired on August 8, 2001. Plaintiff depo. at 61, 64 (submitted as defendant exhibit 1). She was interviewed by



Lucky Tombrello and Chuck Hayes.[1]  *Id.* at 61.  Hayes states he and Tombrello made the actual decision to hire the plaintiff.  Hayes declaration, ¶ 5 (submitted as defendant exhibit 5).  The offer of employment was extended to the plaintiff by Tina Holt, who works for defendant in Human Resources.  Plaintiff depo. at 62; exhibit 4 to plaintiff depo.  Plaintiff asserts her supervisor, Hayes, discriminated against her based on her sex, and that she was terminated in retaliation for complaining about this discrimination.  The plaintiff asserts that Hayes made sexually degrading and offensive comments.  Plaintiff depo. at 193; Complaint at ¶ 9.  The plaintiff claims she was treated worse than male employees.[2]  EEOC charge, submitted by defendant as Exhibit 2 to plaintiff. depo.  The plaintiff brings suit under  Title VII, 42 U.S.C. § 2000e, *et seq.*

The plaintiff asserts Hayes hates women.  Plaintiff depo. at 11.  She alleges he treated her differently then the men because she is a woman.  *Id.* at 12. The plaintiff testified to the following statements by Hayes as evidence that he discriminated against her because of her sex:

---

[1]Hayes is the District Manager for Birmingham, where the plaintiff was employed. Hayes depo. at 7.

[2]The plaintiff's EEOC charge asserts that the plaintiff was subjected to "sexually inappropriate comments" and treated in a "sexually degrading and offensive manner." Exhibit 2 to plaintiff depo.  However, the plaintiff specifically states she makes no claim for hostile environment sexual harassment.  Plaintiff's response at 22, n. 16.

2

Hayes said his homosexual designer was more feminine than plaintiff. Plaintiff depo. at 13. He told her she needed to learn to take a good ass chewing. *Id.* at 14. He told plaintiff that things would be better now that Lucky Tombrello was fired, that Tombrello may not have harassed her because she was not there long enough, but he would have if he was there longer. *Id.* at 16, 24-25. Hayes also told the plaintiff that he asked Tombrello about "the Stephanies'" bonus checks, to which Tombrello responded "f**k them, they won't know the difference."[3] *Id.* at 17. However, the plaintiff did get a bonus check. *Id.*

Hayes also told plaintiff that she was being "watched through a microscope because of who hired her and the reason she was hired." Plaintiff depo. at 21. He added not to take it as a threat, but as an opportunity to do her best. *Id.* She did not ask what he meant by this, but assumed he meant Tombrello hired her because she is female.[4] *Id.* at 21-22.

The plaintiff asserts that complaints about her went directly to Hayes and he blew them out of proportion. Plaintiff depo. at 26. Plaintiff told her mother Hayes

---

[3]The plaintiff testified Hayes told her Dick Justice, a manager, called her and another employee, Stephanie Hereford, "the Stephanies." Plaintiff depo. at 140. While plaintiff submitted many allegations concerning Stefanie Hereford, the court finds them irrelevant to the issue of whether the plaintiff was discriminated against based on her sex. *See e.g.*, plaintiff depo. at 28-30, 36-39, 135.

[4]Tombrello was terminated in January, 2001. Plaintiff depo. at 22-23.

would praise her one day and criticize her the next. Little depo. at 76-77 (submitted as defendant exhibit 3). However, Hayes did not treat her in a sexually degrading or offensive manner. Plaintiff depo. at 31.

Hayes told her he did not like big women. Plaintiff depo. at 32. He told her about an ex-girlfriend, his ex-wife, and his current wife. *Id.* He said he and his current wife called his ex-wife "plaintiff" and "dracula." *Id.* at 12, 32. He said that women whine and complain all the time. *Id.* at 32. This last comment was made because the plaintiff complained that it was too cold in the office in the summer and she had to wear a jacket it was so cold. *Id.* at 33. Hayes also introduced another woman as "GFN" who stated to plaintiff it stood for "good for nothing." *Id.* Hayes told the plaintiff he had the power to hire and fire people. *Id.* at 34. The plaintiff told Hayes how much business she was writing, and Hayes said he would hug her, but he couldn't. *Id.* at 45.

Hayes asked if she and the other Stephanie were doing "girlie things" on one occasion when they had lunch together. Plaintiff depo. at 42-43. Hayes actually asked Paul Tuliatos this, and Paul relayed it to her. G. Corley depo. at 110-111, 117 (submitted as defendant exhibit 2). The plaintiff also testified that, once, all the men in the office went to play golf. Plaintiff depo. at 40. The plaintiff also stated that Hayes would only joke around with the men. *Id.* at 41.

The plaintiff relayed all of these instances to her husband, and mother.  G. Corley, depo. at 36-41, 42-43; Little depo. at 49-53.  Her husband states that almost every night in July, 2001, she was bothered by something Hayes did.  G. Corley depo. at 47-48.  She told him Hayes was setting her up to fire her.  *Id.* at 48.

On July 31, 2001, Hayes met with the plaintiff and told her she was not doing a good job.  Plaintiff depo. at 110.  This meeting was also attended by Barbara Naccari, Hayes' secretary.  *Id.* at 42, 111.  He told her she did sloppy work and he expected perfection.  *Id.* at 113.  The plaintiff asserts Hayes was trying to make her quit.  *Id.* at 115.  The plaintiff pointed out to Hayes that Joel Higginbotham made lots of mistakes.  *Id.* at 117.  Hayes told her she was more mature and experienced than Joel Higginbotham, so he expected more out of her, even though Joel was there a year longer than she was.  *Id.* at 44-45, 117.  Hayes told her to go home, and they would talk more the next day.  *Id.* at 121, 123.  Hayes declaration, ¶ 15.  He also told her no one wanted to work with her, that the defendant was changing and he did not know what to do with her.  Plaintiff depo. at 122.  He told her if she did not improve, she would be fired.  *Id.* at 123-124.

The next day, rather than return to work, the plaintiff went to Sharon Heaton (Associate Resources manager), Jo Ann McKee (Manager of Compliance Department) and Emma Barclay (Corporate Compliance Specialist), who all work in Human

Resources, to complain about Hayes.[5]  Plaintiff depo. at 61, 131; Heaton depo. at 7,

31, 80 (submitted as defendant exhibit 6); McKee depo. at 7 (submitted as defendant

exhibit 8); Barclay depo. at 13 (submitted as defendant exhibit 9).  Plaintiff testified

that she went to Human Resources because she knew Hayes' intentions were not

good.  Plaintiff depo. at 129-130.  She told them that Hayes hated women and she was

being discriminated against.  *Id.* at 134, 139.  She did not put this in writing.  *Id.* at 61.

The plaintiff is not sure if she said this was sex discrimination or sex harassment or

used either term.  *Id.* at 154-155.

Plaintiff spoke with McKee first, who called Heaton to talk to "a distressed

employee."  Heaton depo. at 49.  McKee stated she called Heaton because it was a

performance issue, not a compliance issue.  McKee depo. at 68-69; Barclay depo. at

47.  McKee also called Barclay to sit in.  Barclay depo. at 18.  Heaton testified that the

plaintiff said she was being picked on by her manager.  Heaton depo. at 82-83, 89-90,

101-102.  Heaton stated the plaintiff did not call it sex discrimination.  *Id.* at 102-103.

Heaton recalled the plaintiff stating she thought Hayes was going to fire her.  *Id.* at

103-105, 107; Barclay depo. at 36.  Heaton also testified that the plaintiff did not want

---

[5]On August 1, 2001, Heaton had held her position since January 1, 2001and was
never formally trained on sexual discrimination complaints.  Heaton depo. at 23, 35-36.
However, she was trained on sex discrimination before she met with the plaintiff.  Heaton
depo. at 41-42.  McKee had her position several months and Barclay was new in her
position.  McKee at 7, 11, 13-15; Barclay at 27.  Both McKee and Barclay went to law
school.  McKee at 12.  All three were long time employees of the defendant.

to go back to the district office. Heaton depo. at 108.   Barclay testified that the plaintiff's complaint was that Hayes was "cold-hearted." Barclay depo. at 29.

Plaintiff was told they would investigate her complaints. Plaintiff depo. at 135. She told them to talk to the "other Stephanie," but does not think anyone spoke with her. *Id.* at 135-136. The plaintiff was placed on administrative leave for eight days. *Id.* at 106-107, 131, 157; Barclay at 56.

Heaton spoke with Hayes after talking to the plaintiff and asked what led up to their July 31 meeting. Heaton depo. at 86. McKee and Barclay went to Barbara Naccari, who sat in on the July 31 meeting between plaintiff and Hayes, to find out what the July 31 meeting was about and to see if the plaintiff's comment that she would be fired if she went back to the office was true.   McKee depo. at 51-52. Naccari said they had not talked about termination. *Id.* at 52-53. McKee did not see what the comment Hayes made about what Tombrello said about the Stephanies' bonus checks had to do with anything because Tombrello was gone. *Id.* at 61-66. McKee testified that the plaintiff was upset because she thought Hayes was angry at her. *Id.* at 67. McKee also stated the investigation was handled primarily by Heaton because it was not a compliance issue, but rather was a performance issue. *Id.* at 30. During their meeting, the plaintiff did not say she was being treated unfairly because she was female. *Id.* at 30.

7

While the plaintiff was on leave, Barbara Heaton called her and said they had investigated and found a check in a file and a phone call she did not return. Plaintiff depo. at 197-198. The plaintiff pointed out she was on administrative leave. *Id.* at 198. Heaton told her she was fired and to turn in her cell phone and badge. *Id.* at 200; EEOC charge (submitted as exhibit 5 to McKee depo.); Hayes depo. at 86-87 (submitted as defendant exhibit 4). Hayes testified he made the decision to fire her. Hayes depo. at 45, 87-88. He did so because she did not show up the next morning like he told her to, but his decision was also based on her "long and illustrious track record."[6] *Id.* at 89-91, Hayes declaration, ¶¶ 16-17.

Hayes testified that he had the evidence to fire her when he talked to her on July 31, 2001, but then, on August 1, 2001 he received an email that she tried to write a policy for another two man group. On August 6, 2001, he had a customer complain that the plaintiff did not return calls. Hayes depo. at 93. Thus, Hayes told Heaton he wanted her fired sometime during the first week of August. *Id.* at 94. *See also* Hayes notes, Ex. A to Hayes declaration. Heaton recommended to the Vice President of Human Resources that the plaintiff be fired for her poor job performance. Heaton declaration, ¶ 27 (submitted as defendant exhibit 7). Hayes got the approval of the Corporate Vice President to terminate the plaintiff. *Id.*, ¶ 28.

---

[6]The only discipline report for the plaintiff is her termination. Plaintiff exhibit H.

Hayes hired a male, Mark McLaughlin, to replace the plaintiff. Hayes depo. at 65-66. McLaughlin was hired conditionally, pending his completion of college in August, 2001, shortly after the plaintiff was fired. *Id.* at 66. However, McLaughlin was interviewed prior to May 31, 2001, long before the plaintiff was terminated. Plaintiff exhibit R.

The defendant sets forth many reasons for firing the plaintiff, all relating to her job performance. The defendant alleges the plaintiff was receiving compensation for insurance she wrote with her ex-husband before she came to work for defendant, which violated its conflict of interest policy. The plaintiff testified these commissions were about $1,500.00 per month.[7] Plaintiff depo. at 75. The plaintiff asserts she told Hayes and Tombrello about these when she was hired. *Id.* at 75, 80-81. In February, 2001, Hayes counseled plaintiff about this and she reminded him he knew about it. Plaintiff depo. at 79; exhibit A to Hayes declaration. However, she told him she would get them stopped because she did not want to lose her job. Plaintiff depo. at 79, 81. She had the state remove her licenses for all insurance except that of defendant. *Id.* at 127-128; exhibit A to Hayes declaration.

---

[7]The parties dispute whether the plaintiff continued to receive these commissions after she was specifically told she could not. The court does not find this dispute to be material, as it was not a complaint raised by Hayes on July 31, 2001, nor by plaintiff the following day. While defendant contends it could have terminated plaintiff for this, there is no evidence it did so.

According to the defendant, on one occasion, a customer had an appointment with the plaintiff to pick up a check, but the plaintiff did not show up for the appointment, and the customer called Hayes. Plaintiff depo. at 82-83; exhibit A to Hayes declaration. The plaintiff testified said told Hayes she did not have an appointment and Hayes told her not to worry about it. Plaintiff depo. at 83-84. Hayes stated another customer also told him the plaintiff did not show up for an appointment. *Id.* at 105-106; exhibit A to Hayes declaration. The plaintiff states she spoke to this woman by phone, told her she had an appointment out of the office, and that they resolved everything by phone. Plaintiff depo. at 107-109. The plaintiff told Hayes the woman would be coming by to get some documents but she did not have an appointment, and he said "okay." *Id.* at 109-110. *But see* exhibits H and J to Heaton declaration; exhibit A to Hayes declaration.

Hayes told the plaintiff in May, 2001 that he had two or three customer complaints about her not returning calls. Plaintiff depo. at 84-85; exhibit A to Hayes declaration. Plaintiff explained that, for one of them, she got the message and e-mailed the underwriting department to find out the status of their coverage before returning the call. Before she got an answer, they had complained to Hayes that she did not call them back. Plaintiff depo. at 87-88. Another unreturned call plaintiff states never occurred. *Id.* at 104-105. *See* exhibits H and J to Heaton declaration.

10

There was a problem with one policy she wrote where she made a husband and wife a "group" and was told she could not do that. Plaintiff depo. at 89-90. However, defendant asserts this occurred more than one time. *See* exhibits E and G to Heaton declaration; exhibit A to Hayes declaration. On one policy she wrote for a three people group, the company returned the package incomplete, did not send a check and sent it to the wrong office. Plaintiff had that company complete a new contract and applications, and send a check. The plaintiff explained that meanwhile, the first package showed up at another office, without the third person application, so underwriting incorrectly thought the plaintiff was trying to write a husband and wife as a group. Plaintiff depo. at 91-92. Everything was eventually approved for that policy. *Id.* at 93.

On another occasion, the plaintiff states she sent information to a customer, although Hayes said the customer told him he never received the information. Plaintiff depo. at 96. The plaintiff did not know the customer said he did not get the information. *Id.* at 97. *See* exhibit G to Heaton declaration.

Yet another time, the plaintiff wrote a group policy for a start up company. According to the plaintiff, the CFO of that company vetoed the policy the employees wanted and chose a cheaper plan. An employee then called and complained that he did not get the policy he was promised. Plaintiff depo. at 100-101; exhibit A to Hayes

declaration. However, the company reported to defendant that they did not get the policy they wanted. *See* exhibit G to Heaton declaration.

Before she was fired, the plaintiff asked Hayes for investment advice, which he gave her, asked him to write to her mortgage company, which he did, and got her signed up for a trip she was not otherwise eligible for. Plaintiff depo. at 141-143.

Heaton testified that the items Hayes listed as performance problems were the same things plaintiff raised in her meeting with Heaton on August 1, except plaintiff and Hayes had different versions of what occurred. Heaton depo. at 112-113. *See also* exhibit 4 to Heaton depo. After August 1, 2001, Heaton told Hayes to back up his statements about the plaintiff, so Hayes sent out an email to other employees of defendant asking if they had any complaints about the plaintiff. Heaton depo. at 116-118; exhibit 5 to Heaton depo.; exhibits G-L to Heaton declaration. Heaton stated she investigated the plaintiff's complaints and found nothing to support plaintiff's allegation that Hayes picked on her because she is female. Heaton declaration, ¶¶ 24-25.

The defendant also lists numerous other incidents concerning problems with the plaintiff's job performance, to which the plaintiff responds that she knows nothing about them and has never heard those complaints. Plaintiff depo. at 161-169. Hayes testified that the plaintiff never accepted responsibility for her actions. Hayes

12

declaration at ¶ 12.  *See* exhibits H and I to Heaton declaration; exhibit A to Hayes declaration.

The plaintiff argues that, although Hayes also had criticisms of Stephanie Hereford's work, she did not complain about sex discrimination, and she did not get fired.  *See* Hayes depo. at 19-23.  Hayes spoke with Higginbotham about job performance.  *Id.* at 24, 27.  However, he did not document problems with Higginbotham like he did with plaintiff.  *Id.* at 29, 31-32.  Additionally, Higginbotham was sent for additional training to improve his performance, after he had been there ten months.  *Id.* at 37-38, 40-41.  Heaton says the difference is that plaintiff had no commitment to improving.  Heaton depo. at 117-118.

## II. STANDARD OF REVIEW

Under Federal Rule of Civil Procedure 56(c), summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law."  *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).  As the Supreme Court has explained the summary judgment standard:

> [T]he plain language of Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will

bear the burden of proof at trial. In such a situation, there can be no genuine issue as to any material fact, since the complete failure of proof concerning an essential element of the non-moving party's case necessarily renders all other facts immaterial.

*Celotex Corp.,* 477 U.S. at 322-23. The party moving for summary judgment always bears the initial responsibility of informing the court of the basis for its motion and identifying those portions of the pleadings or filings which it believes demonstrates the absence of a genuine issue of material fact. *Id.* at 323. The burden then shifts to the nonmoving party to "go beyond the pleadings and by ... affidavits, or by the 'depositions, answers to interrogatories, and admissions on file' designate 'specific facts showing that there is a genuine issue for trial.'" *Celotex*, 477 U.S. at 324, Fed. R. Civ. Pro 56(e). In meeting this burden the nonmoving party "must do more than simply show that there is a metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). That party must demonstrate that there is a "genuine issue for trial." Fed.R.Civ.Pro. 56(c); *Matsushita*, 475 U.S. at 587, *see also Anderson v. Liberty Lobby*, 477 U.S. 242, 249 (1986). The non-movant must "demonstrate that there is indeed a material issue of fact precluding summary judgment." *Clark v. Coats & Clark, Inc.*, 929 F.2d 604, 608 (11th Cir.1991).

## III. LEGAL ANALYSIS

Plaintiff asserts that the above facts constitute sex discrimination and retaliation. As the court can find no direct evidence of discrimination, the court

14

applies the analysis required for circumstantial evidence.  This court must apply a three prong test fashioned by the Supreme Court in *McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 93 S.Ct. 1817 (1973).  *See also Texas Department of Community Affairs v. Burdine,* 450 U.S. 248; 252-253; 101 S.Ct. 1089, 1093-1094 (1981).  First, the plaintiff must establish a *prima facie* case of discrimination.  *McDonnell Douglas Corp.,* 411 U.S. at 802, 93 S.Ct. at 1824. Establishment of a *prima facie* case creates a presumption that the employer unlawfully discriminated against the employee. *Burdine,* 450 U.S. at 254, 101 S.Ct. at 1094; *Combs v. Plantation Patterns,* 106 F.3d 1519, 1527-1528 (11th Cir. 1997).

Assuming the employee meets this burden, the burden then shifts to the defendant to articulate a legitimate, nondiscriminatory reason for the alleged discriminatory employment action. *Harris v. Shelby County Board of Education,* 99 F.3d 1078, 1083 (11th Cir.1996).  The defendant can feasibly present such strong evidence of a nondiscriminatory rationale that summary judgment is warranted. *Brown v. American Honda Motor Co., Inc.,* 939 F.2d 946, 950 (11th Cir.1991), *cert. denied,* 502 U.S. 1058 (1992)(quoting *Grigsby v. Reynolds Metals Co.,* 821 F.2d 590. 596 (11th Cir.1987).

Once a defendant presents a legitimate, nondiscriminatory reason for its action, the presumption of discrimination drops from the case. *Burdine,* 450 U.S. at 255, 101

S.Ct. at 1094 and n. 10.  The plaintiff must then demonstrate by a preponderance of the evidence that the reason offered by the defendant was not the true reason for the employment decision, but rather a mere pretext for discrimination.  *McDonnell Douglas*, 411 U.S. at 804, 93 S.Ct. at 1825.  The focus of the case after the defendant meets its burden of production is on the defendant's subjective intent and the motivation behind the defendant's adverse employment action directed at plaintiff. *Harris*, 99 F.3d at 1083.

The plaintiff meets her prima facie burden of proof by establishing that (1) she is a member of a protected class; (2) she was qualified for her job; (3) she suffered an adverse employment action; and (4) her employer treated similarly situated employees outside the protected classification more favorably.  *Rice-Lamar v. City of Fort Lauderdale*, 232 F.3d 836, 842-43 (11th Cir. 2000), citing *Holifield v. Reno,* 115 F.3d 1555, 1562-63 (11th Cir.1997).  The court has carefully read the plaintiff's and the defendant's evidentiary submissions.  The parties do not dispute that the plaintiff meets the first two elements of her prima facie case.  However, the parties do dispute whether or not Hayes' criticisms of plaintiff constitute an adverse employment action and whether  any employee outside the protected class was treated more favorably than the plaintiff.

The plaintiff asserts that Higginbotham, a male, was treated more favorably than she. Plaintiff's response, at 21. The court must consider whether the plaintiff and Higginbotham were involved in or accused of similar conduct and disciplined in different ways. *Maniccia v. Brown,* 171 F.3d 1364, 1368 (11th Cir. 1999). The Eleventh Circuit requires that the quantity and the quality of the comparator's misconduct be nearly identical to prevent courts from second-guessing employers' reasonable decision and confusing apples with oranges. *Id.* Title VII does not take away an employer's right to interpret its rules as it chooses, and to make determinations it sees fit under those rules. *Jones v. Bessemer Carraway Med. Ctr.,* 137 F.3d 1206, 1311 (11th Cir.), *opinion modified by* 151 F.3d 1321 (1998) (quoting *Nix,* 738 F.2d at 1187). The court concludes that plaintiff's argument that Higginbotham was treated more favorably thus does not assist her claim, as he was disciplined for different reasons (lack of confidence and inability to speak in front of groups).[8] Higginbotham's performance problems did not result from customer complaints. Hayes declaration, ¶ 19; plaintiff exhibit M. The defendant decided that the plaintiff and Higginbotham's performance shortcomings were not of equal severity. Whether this decision was "prudent or fair" is not an appropriate question

---

[8]The court notes that the raise Higginbotham received on May 21, 2001 brought him up to the same pay at which the plaintiff was hired in November, 2000. *See* plaintiff exhibit M; defendant exhibit 4 to plaintiff depo.; and plaintiff exhibit 3 to Heaton depo.

for this court to decide. *See Rojas v. Florida*, 285 F.3d 1339,1342 (11th Cir.2002),

citing *Damon v. Fleming Supermarkets of Florida, Inc.*, 196 F.3d 1354, 1361 (11th

Cir.1999).

Even assuming, as plaintiff does, that the performance review on July 31, 2001

was unwarranted, the plaintiff offers no evidence that she received that review due to

her sex.  Plaintiff argues that she was submitted to a higher level of criticism than

male co-workers, received unwarranted discipline and was terminated.  However, the

plaintiff has offered no evidence of a male co-worker who was accused of not

returning phone calls and not showing up for appointments with customers.

The plaintiff also asserts various comments by Hayes to demonstrate that he

hates women, in support of her claim.  However, even if Hayes does hate women, this

is not the same as stating he treated her differently because she was female.  Rather,

plaintiff must prove that the defendant acted with discriminatory purpose. *Williams*

*v. Motorola,* 303 F.3d 1284, 1293 (11th Cir.2002), citing *Nix v. WLCY Radio/Rahall*

*Communications*, 738 F.2d 1181, 1184 (11th Cir.1984).  Nothing in Title VII required

Hayes to like the plaintiff, or even be nice to her.  Title VII is not a "general civility

code." *Gupta v. Florida Board of Regents*, 212 F.3d 571, 583 (11th Cir.2000), citing

*Faragher v. City of Boca Raton*, 524 U.S. 775, 788, 118 S.Ct. 2275, 2283-84, 141

L.Ed.2d 662 (1998).  The court finds the comments on which the plaintiff relies to

establish a discriminatory animus on the part of Hayes are not objectively demeaning to women, offensive, or discriminatory.[9]  Even Hayes' comment that women whine too much cannot be said to be discriminatory.   The comments, alone or in combination, simply do not rise to the level of sexually discriminatory comments. The plaintiff complains of things that no reasonable person would consider to be of a gender-related nature.   For example, being told she is being watched under a microscope because she was hired by Tombrello is not a gender-related comment. Similarly, Hayes statement that he has the power to hire and fire is not gender-related. *See e.g., Gupta*, 212 F.3d at 583 ("Those statements merit no mention in a discussion of sexual harassment, except perhaps to serve as a clear example of what it is not").

Even if the court were to assume that the plaintiff had established her prima facie case, the defendant then has articulated numerous legitimate, nondiscriminatory reason for the plaintiff's termination.  However, each of these reasons boils down to the fact that after being informed of her performance inadequacies, the plaintiff did not state she would try to do better, or even accept that she was not doing a

---

[9]For example, the comment that a male designer is more feminine than plaintiff may be offensive to that male, but is not objectively offensive to females.  Similarly, being told to learn to take "a good ass-chewing" is not an sexually discriminatory comment.  What Hayes called his ex-wife cannot be said to be a reflection of his attitudes toward women in general.  Several of the comments about which the plaintiff complains were not even made by Hayes.  Additionally, the plaintiff specifically testified in her deposition that Hayes did not treat her in sexually degrading or offensive manner. Plaintiff dpeo. at 31.

satisfactory job. *See e.g., Motorola,* 303 F.3d at 1293, citing *Greenfield v. City of Miami Beach*, 844 F.Supp. 1519, 1526 (S.D.Fla.1992) ("Defendants have provided evidence that [plaintiff] did poorly on a job evaluation, repeatedly disobeyed instructions from her superiors, and made inappropriate phone calls.... More fundamentally, [plaintiff] fails to demonstrate that other employees not in her protected class acted in a similar manner as [plaintiff] but were retained by the employer."); *see also Jones v. Gerwens*, 874 F.2d 1534, 1542 (11th Cir.1989).

Plaintiff offers no evidence, as opposed to speculation, that poor performance as the reason for her discipline was pretextual and that she was the victim of intentional discrimination. *See Rice-Lamar*, 232 F.3d at 843, quoting *Texas Dept. of Community Affairs v. Burdine*, 450 U.S. 248, 255-56, 101 S.Ct. 1089, 1094-95, 67 L.Ed.2d 207 (1981). Additionally, although the plaintiff argues that the review and discipline were unwarranted, the court may not second-guess an employer's decision. *See e.g., Maniccia,* 171 F.3d at 1368-69.

The plaintiff's arguments are all based on her belief that her work was acceptable and therefore she must have been disciplined and ultimately terminated for some reason other than the quality of her work. However, the plaintiff must show "not merely that the defendant's employment decisions were mistaken, but that they were indeed motivated by sex. *Lee v. GTE Florida, Inc.*, 226 F.3d 1249, 1253 (11th

Cir.2000), citing *Alexander v. Fulton Co.,* 207 F.3d 1303, 1309 (11ᵗʰ Cir.2000). The court finds no evidence in the record before it that the plaintiff's discipline was based on her sex. Thus, the defendant's motion for summary judgment on the plaintiff's claim of sex discrimination is due to be granted. *See e.g., Gupta,* 212 F.3d at 587 (stating Title VII is neither a general civility code "nor a statute making actionable the 'ordinary tribulations of the workplace'").

The plaintiff also claims that she was terminated in retaliation for her complaints of sex discrimination. Under Title VII, the plaintiff does not have to prove the underlying claim of discrimination in order to establish a retaliation claim. *Taylor v. Runyon*, 175 F.3d 861, 869 (11ᵗʰ Cir.1999). Rather, her opposition to the alleged discrimination is protected if she can reasonably form a good faith belief that the alleged discrimination existed. *Id*. However, the facts before this court do not support that the plaintiff filed a discrimination claim prior to her termination.

The evidence in this case is such that the defendant did not consider her complaints to be about sex discrimination, but rather complaints that Hayes was "picking on her." Heaton depo. at 82-83, 89-90, 101-102. McKee testified she called Heaton into the meeting because plaintiff's complaints were about performance issues. McKee depo. at 68-69. Barclay stated that the plaintiff's main complaint was that Hayes was a "cold person." Barclay depo. at 29, 37, 39-40. The plaintiff told the

21

three women she spoke to about her complaints that she did not want to return to her office for fear she would be fired, so she was told to go home while they investigated. McKee depo. at 51-52. This was in spite of having been told on July 31, 2001 that she was not being terminated, but rather to go home and determine if she wanted to make the effort to put forth a better performance. She was specifically told by Hayes to return to work the morning of August 1, 2001. Plaintiff depo. at 121, 123.

To establish a prima facie retaliation claim, the plaintiff must show: 1) statutorily protected expression; 2) an adverse employment action; and 3) a causal link between the protected expression and the adverse action, *Runyon*, 175 F.3d at 868; citing *Goldsmith v. City of Atmore*, 996 F.2d 1155, 1163 (11th Cir. 1993). The court finds that the defendant did not believe the plaintiff was complaining of sex discrimination at the time it made the decision to terminate her.[10] Each of the women present at the time plaintiff lodged her complaints on August 1, 2001, testified she did not think that the plaintiff was complaining of sex discrimination, and that the plaintiff did not use that term. Even the plaintiff could not state that she had complained of sex discrimination on August 1, 2001.

---

[10]The court notes that the plaintiff relies on the defendant's January, 2002 response to the plaintiff's EEOC charge. *See* plaintiff's response at 23. As that document did not exist in August, 2001, it does not provide any evidence of the true reasons for the plaintiff's termination on August 8, 2001. *See* plaintiff exhibit T. Additionally, it is not evidence of what the plaintiff told Heaton, McKee and Barclay on August 1, 2001.

However, assuming that the plaintiff's complaints constituted protected activity, the court notes her termination is an adverse employment action. Thus, the court considers whether a causal connection between the two events exists. The plaintiff must show that "'the decision-maker[s] [were] aware of the protected conduct,' and 'that the protected activity and the adverse action were not wholly unrelated." *Farley v. Nationwide Ins. Co.*, 197 F.3d 1322, 1337 (11th Cir.1999). Here, they are closely related in time, being approximately one week apart. Thus, the court must examine the defendant's proffered reasons for its actions. *See Farley, supra* ("a plaintiff satisfies this element if [she] provides sufficient evidence that the decision-maker became aware of the protected conduct, and that there was close temporal proximity between this awareness and the adverse employment action"). Again, the defendant asserts the plaintiff was terminated for her performance. The court's place is not to adjudge whether the employment decision in question was prudent or fair. Rather, the court's sole concern is whether unlawful discriminatory animus motivated the decision to terminate plaintiff. *Damon v. Fleming Supermarkets of Fla., Inc.*, 196 F.3d 1354, 1361 (11th Cir. 1999).

The court finds that the plaintiff was not told she would be terminated on July 31, 2001, rather, she was told to think about her job and Hayes would speak with her further the next day. Rather than go back to Hayes, plaintiff went to McKee to

complain about Hayes.  In investigating the plaintiff's complaints, the plaintiff's performance was called into question.  As such, the defendant investigated what Hayes told plaintiff, and decided to terminate her.  Thus, the court finds the plaintiff has shown her complaints led to her termination.  Assuming this is sufficient for a causal connection, the defendant must show legitimate reasons for the employment action to negate the inference of retaliation. *Runyon*, 175 F.3d at 868.  Defendant has done so.  It has put forth a plethora of reasons in support of its decision to terminate plaintiff.  The burden then shifts back to the plaintiff to show, by a preponderance of the evidence that such reasons are pretextual. *Id.*  Plaintiff cannot make this showing.  Rather, she states only that she "fixed" each of the things for which defendant criticized her work performance.

None of the three women present when plaintiff complained on August 1 took her complaints as being of sex discrimination.  Rather, they considered the plaintiff as complaining that Hayes expected perfection.  She did not condition this expectation on the fact that she was female.  Thus, the court doubts that the plaintiff has engaged in any protected expression.  The termination decision was made, in part, by a woman, the plaintiff's complaints were investigated by women, and the person she states discriminated against her based on her sex also made the decision to hire her.  Hayes

had a woman sit in with him when he chastised the plaintiff on July 31, 2001 for her work performance.

The factual record of this case would require the court to do nothing more than second-guess the defendant's business decision. "This kind of inquiry – whether a business decision is wise or nice or accurate – is precluded by *Damon* ..." *Rojas*, 285 F.3d at 1344. *See also Combs v. Plantation Patterns*, 106 F.3d 1519, 1543 (11th Cir.1997) ("a plaintiff may not establish that an employers proffered reason is pretextual merely by questioning the wisdom of the employer's reasons, at least not where ... the reason is one that might motivate a reasonable employer"). In essence, the facts of this case are the defendant stating the plaintiff performed her duties in an unacceptable manner, and the plaintiff responding that she did a fine job.

The court finds no basis on which a reasonable juror could conclude that the defendant retaliated against the plaintiff for complaining of sex discrimination. As such, the court shall grant the defendant's motion for summary judgment on this claim by separate order.

## IV. CONCLUSION

The court having considered the foregoing, and finding that the plaintiff has failed to establish any genuine issue of material fact sufficient to allow this case to proceed to trial, the court **ORDERS** that the defendant's motion for summary

judgment is hereby **GRANTED**. The plaintiff's claims are **DISMISSED WITH PREJUDICE**. Each party is to bear its own costs.

**DONE** and **ORDERED** this the _13_ day of February, 2003.

INGE P. JOHNSON
UNITED STATES DISTRICT JUDGE